UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| RICARDO CASTILLO, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ADT LLC and DOES 1 through 100 inclusive,<br><br>Defendant. | CIV. NO. 2:15-383 WBS DAD<br><br>MEMORANDUM AND ORDER RE: MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT |

----oo0oo----

        Plaintiff Ricardo Castillo brought this putative class action against defendant ADT LLC, alleging that defendant violated various California wage and hour laws.  (Second Am. Compl. ("SAC") (Docket No. 42).)  Presently before the court is plaintiff's motion for preliminary approval of a class action settlement reached between the two parties.  (Pl.'s Mot. (Docket No. 44).)

1

1   I.   Factual and Procedural Background

2           Defendant provides electronic security, alarm, and home

3   and business automation services throughout the United States.

4   (Pl.'s Mot., Mem. ("Pl.'s Mem.") at 3.)  Defendant operates some

5   twenty locations in California, each of which employs "non-exempt

6   High Volume Installers" ("class members").  (Id. at 1-3.)

7           Plaintiff, a non-exempt high volume installer, contends

8   that defendant violated California wage and hour laws by paying

9   class members pursuant to a wage policy that fails to compensate

10  them for off-the-clock work, such as traveling between customer

11  sites and picking up supplies from warehouses.  (Id. at 2-3.)  By

12  underpaying class members pursuant to that policy, plaintiff

13  alleges, defendant also under-calculates their overtime rate,

14  which must be "at least one and one-half times [their] regular

15  rate of pay" under California law.  (Id.)  Plaintiff also alleges

16  that defendant failed to "reimburse [class members] for necessary

17  business expenses and provide compliant itemized wage

18  statements."  (Id. at 1.)

19          Based on these allegations, plaintiff asserts the

20  following claims against defendant: (1) failure to pay proper

21  overtime and/or minimum wages, Cal. Lab. Code §§ 510 and 1194;

22  (2) failure to timely pay earned wages, Cal. Lab. Code § 204; (3)

23  failure to provide adequate pay stubs, Cal Lab. Code § 226; (4)

24  continuing wages, Cal. Lab. Code § 203; (5) failure to reimburse

25  expenses, Cal. Lab. Code § 2802; (6) unfair competition, Cal.

26  Bus. and Prof. Code § 17200 et seq.; (7) civil penalties pursuant

27  to the Labor Code Private Attorneys General Act ("LCPAGA"), Cal.

28  Lab. Code § 2699.3(a)(2)(C); and (8) failure to provide or

1   compensate for rest breaks, Cal. Lab. Code § 226.7 and Industrial

2   Welfare Commission Order 4.  (SAC at 14-21.)

3        Plaintiff seeks to certify a class of "non-exempt

4   individuals employed by ADT in California as high volume

5   installers who were paid for services performed at any time from

6   April 18, 2013 to the date of preliminary approval of this

7   Settlement Agreement" ("settlement class").  (Decl. of Linda

8   Claxton Ex. E., Settlement Agreement ¶ 2.23 (Docket No. 46-6).)

9   Plaintiff seeks, on behalf of himself and the class, damages

10  allegedly accrued during the "period between April 18, 2013 and

11  the date of Preliminary Approval of this Settlement Agreement"

12  ("class period").  (Id. ¶ 2.26.)

13       Plaintiff and defendant litigated this case for over a

14  year before reaching a settlement agreement on April 24, 2016

15  before a mediator.  (Pl.'s Mem. at 3-4.)  Under the terms of the

16  agreement, defendant agrees to pay a non-reversionary sum of

17  $1,060,000 ("settlement amount") in satisfaction of plaintiff's

18  class-wide claims.  (Id. at 6.)  The settlement amount is to be

19  distributed as follows: (1) class counsel will apply for a fee of

20  33% of the settlement amount--$349,800; (2) plaintiff will apply

21  for an enhancement award not to exceed $5,000; (3) up to $16,000

22  will be used for litigation expenses; (4) $8,000 will be paid to

23  the class administrator; (5) $3,750 will be paid to the

24  California Labor & Workforce Development Agency in satisfaction

25  of defendant's alleged penalties under LCPAGA; and (6) the

26  remaining amount--approximately $677,450 ("class fund")--will be

27  distributed to the settlement class based on the number of weeks

28

3

1    each class member worked during the class period.[1]  (Id. at 6-7.)

2           Plaintiff estimates that defendant will have employed

3    some 362 class members, including himself, during the class

4    period.  (Id. at 1, 7.)  Assuming a 100% rate of return on claim

5    forms, plaintiff estimates that each class member will receive an

6    average recovery of $1,871, a sum which, according to plaintiff,

7    "represents a recovery of a substantial percent of [each class

8    member's] actual damages."  (Id. at 7.)  In the event that not

9    all class members return their forms, the remaining amount will

10   be redistributed to those who do return their forms according to

11   number of weeks worked during the class period.

12          Plaintiff now seeks preliminary approval of the

13   settlement agreement pursuant to Federal Rule of Civil Procedure

14   23(e).

15   II.  Discussion

16          Rule 23(e) provides that "[t]he claims, issues, or

17   defenses of a certified class may be settled . . . only with the

18

19          [1]    The parties agree that the class period is comprised of
     two sub-periods: (1) a 'piece rate' period, during which
20   defendant allegedly paid class members pursuant to a piece rate
     system; and (2) an 'hourly rate' period, during which defendant
21   allegedly paid class members pursuant to an hourly rate system.
     (Pl.s' Mem. at 1.)  Ninety percent of class funds will go towards
22   compensating weeks worked during the 'piece rate' period, and ten
     percent of class funds will go towards compensating weeks worked
23   during the 'hourly rate' period.  (Id.)  The implication of this
     split is that defendant's 'piece rate' system undercompensated
24   class members more severely than its 'hourly rate' system did.
     (See Decl. of Alan Harris ¶ 10 ("The plan of allocation was
25   negotiated in such a way as to fairly allocate the recovery among
     Class Members in accordance with Plaintiff's theories of
26   potential damages as well as the relative strengths and
     weaknesses of the claims . . . .") (Docket No. 45).)  The court
27   finds no reason to doubt the fairness of this allocation.
28

1  court's approval." Fed. R. Civ. P. 23(e).  "Approval under 23(e)

2  involves a two-step process in which the Court first determines

3  whether a proposed class action settlement deserves preliminary

4  approval and then, after notice is given to class members,

5  whether final approval is warranted." Nat'l Rural Telecomms.

6  Coop. v. DIRECTV, Inc., 221 F.R.D. 523, 525 (C.D. Cal. 2004)

7  (citing Manual for Complex Litig., Third, § 30.41 (1995)).

8          This Order is the first step in that process and

9  analyzes only whether the proposed class action settlement

10 deserves preliminary approval.  See Murillo v. Pac. Gas & Elec.

11 Co., 266 F.R.D. 468, 473 (E.D. Cal. 2010).  Preliminary approval

12 authorizes the parties to give notice to putative class members

13 of the settlement agreement and lays the groundwork for a future

14 fairness hearing, at which the court will hear objections to (1)

15 the treatment of this litigation as a class action and (2) the

16 terms of the settlement.  See id.; Diaz v. Trust Territory of

17 Pac. Islands, 876 F.2d 1401, 1408 (9th Cir. 1989) (stating that a

18 district court's obligation when considering dismissal or

19 compromise of a class action includes holding a hearing to

20 "inquire into the terms and circumstances of any dismissal or

21 compromise to ensure that it is not collusive or prejudicial").

22 The court will reach a final determination as to whether the

23 parties should be allowed to settle the class action on their

24 proposed terms after that hearing.

25         The Ninth Circuit has declared a strong judicial policy

26 favoring settlement of class actions.  Class Plaintiffs v. City

27 of Seattle, 955 F.2d 1268, 1276 (9th Cir. 1992).  Nevertheless,

28 where, as here, "the parties reach a settlement agreement prior

1  to class certification, courts must peruse the proposed

2  compromise to ratify both [1] the propriety of the certification

3  and [2] the fairness of the settlement." Staton v. Boeing Co.,

4  327 F.3d 938, 952 (9th Cir. 2003).

5      The first part of this inquiry requires the court to

6  "pay 'undiluted, even heightened, attention' to class

7  certification requirements" because, unlike in a fully litigated

8  class action suit, the court "will lack the opportunity . . . to

9  adjust the class, informed by the proceedings as they unfold."

10  Amchem Prods. Inc. v. Windsor, 521 U.S. 591, 620 (1997); see

11  Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998).

12  The parties cannot "agree to certify a class that clearly leaves

13  any one requirement unfulfilled," and consequently the court

14  cannot blindly rely on the fact that the parties have stipulated

15  that a class exists for purposes of settlement. See Windsor, 521

16  U.S. at 621-22 (stating that courts cannot fail to apply the

17  requirements of Rule 23(a) and (b)).

18      The second part of this inquiry obliges the court to

19  "carefully consider 'whether a proposed settlement is

20  fundamentally fair, adequate, and reasonable,' recognizing that

21  '[i]t is the settlement taken as a whole, rather than the

22  individual component parts, that must be examined for overall

23  fairness . . . .'" Staton, 327 F.3d at 952 (quoting Hanlon, 150

24  F.3d at 1026); see also Fed. R. Civ. P. 23(e) (outlining class

25  action settlement procedures).

26      A.   Class Certification

27      A class action will be certified only if it meets the

28  four prerequisites identified in Rule 23(a) and additionally fits

1   within one of the three subdivisions of Rule 23(b).  Fed. R. Civ.

2   P. 23(a)-(b).  Although a district court has discretion in

3   determining whether the moving party has satisfied each Rule 23

4   requirement, the court must conduct a rigorous inquiry before

5   certifying a class.  See Califano v. Yamasaki, 442 U.S. 682, 701

6   (1979); Gen. Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 161 (1982).

7           1.   Rule 23(a)

8           Rule 23(a) restricts class actions to cases where:

9       (1) the class is so numerous that joinder of all
        members is impracticable; (2) there are questions of
10      law or fact common to the class; (3) the claims or
        defenses of the representative parties are typical of
11      the claims or defenses of the class; and (4) the
        representative parties will fairly and adequately
12      protect the interests of the class.

13  Fed. R. Civ. P. 23(a).  These requirements are commonly referred

14  to as numerosity, commonality, typicality, and adequacy of

15  representation.

16          a.   Numerosity

17          Under the first requirement, "[a] proposed class of at

18  least forty members presumptively satisfies the numerosity

19  requirement."  Avilez v. Pinkerton Gov't Servs., 286 F.R.D. 450,

20  456 (C.D. Cal. 2012); see also, e.g., Collins v. Cargill Meat

21  Solutions Corp., 274 F.R.D. 294, 300 (E.D. Cal. 2011) (Wanger,

22  J.) ("Courts have routinely found the numerosity requirement

23  satisfied when the class comprises 40 or more members.").  Here,

24  plaintiff estimates that the settlement class will contain "some

25  362 Class Members."  (Pl.'s Mem. at 1.)  This satisfies Rule 23's

26  numerosity requirement.

27          b.   Commonality

28          Commonality requires that the class members' claims

7

1  "depend upon a common contention" that is "capable of classwide

2  resolution--which means that determination of its truth or

3  falsity will resolve an issue that is central to the validity of

4  each one of the claims in one stroke." Wal-Mart Stores, Inc. v.

5  Dukes, 131 S. Ct. 2541, 2550 (2011). "[A]ll questions of fact

6  and law need not be common to satisfy the rule," and the

7  "existence of shared legal issues with divergent factual

8  predicates is sufficient, as is a common core of salient facts

9  coupled with disparate legal remedies within the class." Hanlon,

10  150 F.3d at 1019.

11       Here, the settlement class is comprised of "current and

12  former ADT High Volume Installers employed in California during

13  the class period."[2]  (Pl.'s Mem. at 7.)  Such individuals, like

14  plaintiff, would be alleging that defendant paid them pursuant to

15  a wage policy that fails to compensate them for off-the-clock

16  work, under-calculates overtime pay, fails to reimburse business

17  expenses, and fails to provide compliant wage statements.  (See

18  id. at 2-3.)  Thus, the class shares a common core of salient

19  facts--payment pursuant to a single wage policy--which gives rise

20  to the same legal contentions--violations of California wage and

21  hours laws.  Accordingly, the settlement class meets Rule 23's

22  commonality requirement.

23            c.   Typicality

24       Typicality requires that the named plaintiff have

25

26       [2]   Plaintiff refers to the settlement class as "non-exempt
high volume installers" in some instances and just "high volume

27  installers" in others.  (Compare Pl.'s Mem. at 1, with id. at 7.)
The court assumes that both refer to the same set of 362

28  individuals.

1  claims "reasonably coextensive with those of absent class

2  members," but does not require their claims to be "substantially

3  identical." Hanlon, 150 F.3d at 1020.  The test for typicality

4  "is whether other members have the same or similar injury,

5  whether the action is based on conduct which is not unique to the

6  named plaintiff[], and whether other class members have been

7  injured by the same course of conduct." Hanon v. Dataproducts

8  Corp., 976 F.2d 497, 508 (9th Cir. 1992) (citation omitted).

9       As discussed above, plaintiff alleges that he suffers

10 the same injury as the rest of the class--underpayment of wages--

11 and that their injuries arise from the same conduct--defendant's

12 use of an unlawful wage policy.  (Pl.'s Mem. at 2-3.)

13 Accordingly, plaintiff has met Rule 23's typicality requirement.[3]

14              d.   Adequacy of Representation

15      Rule 23(a)(4) requires a showing that the proposed

16 class representatives "will fairly and adequately protect the

17 interests of the class." Fed. R. Civ. P. 23(a)(4).  In deciding

18 whether plaintiff has met that requirement, the court must answer

19 two questions: "(1) do the named plaintiff[] and [his] counsel

20 have any conflicts of interest with other class members and (2)

21 will the named plaintiff[] and [his] counsel prosecute the action

22 vigorously on behalf of the class?" Hanlon, 150 F.3d at 1020.

23      With respect to the first question, plaintiff states

24 that he shares the class's interest in receiving full

25          [3]   Plaintiff's allegation that he worked during both the
26 'piece rate' period and the 'hourly rate' period, (see SAC ¶ 6),
   addresses any questions that may arise as to whether his claim is
27 typical of those of class members who may have worked only 'piece
   rate' or 'hourly rate' periods.

28

1   compensation for work he performed for defendant.  (Pl.'s Mem. at

2   5.)   The court finds no reason to doubt that representation.

3   While plaintiff plans to apply for a $5,000 incentive award,[4]

4   federal courts have generally held that such awards do not create

5   conflicts of interest as to defeat class settlements.  See

6   Staton, 327 F.3d at 977-78 (holding that "reasonable incentive

7   payments" do not create conflicts of interest as to defeat class

8   settlements); Hopson v. Hanesbrands Inc., Civ. No. 08-0844 EDL,

9   2009 WL 928133, at *10 (N.D. Cal. Apr. 3, 2009) ("In general,

10  courts have found that $5,000 incentive payments are

11  reasonable."); Alberto v. GMRI, Inc., 252 F.R.D. 652, 669 (E.D.

12  Cal. 2008) (holding the same).  The courts have held the same

13  with respect to class counsel's plans to apply for a 33%

14  attorneys' fee.  See Garnett v. ADT, LLC, No. CV 2:14-02851 WBS

15  AC, 2016 WL 3538354, at *4 (E.D. Cal. June 28, 2016) (counsel's

16  application for 33% fee does not defeat class certification).

17  Accordingly, the court finds that plaintiff and his counsel do

18  not have conflicts of interest that prevent them from

19  representing the class.

20       "Although there are no fixed standards by which [the

21  second question of Hanlon] can be assayed, considerations include

22  competency of counsel and . . . an assessment of the rationale

23  for not pursuing further litigation."  Hanlon, 150 F.3d at 1021.

24  Here, plaintiff has provided evidence that "Class Counsel have

25       [4]     As justification for the award, plaintiff states that
26  he "expended considerable time conferring with Class Counsel and
    their investigators, providing factual background and support,
27  and analyzing ADT provided data." (Pl.'s Mem. at 8.)  Plaintiff
    "also travelled to San Francisco to participate in the two
28  mediation sessions." (Id.)

1  substantial experience in prosecuting class actions, including

2  wage-and-hour matters."  (Decl. of Alan Harris ¶¶ 20-22 (class

3  counsel each have years of experience litigating multi-million

4  dollar wage-and-hour matters) (Docket No. 45).)  Class counsel

5  decided to forgo further litigation after engaging in

6  "voluminous" discovery, "diligent[]" investigation, two "lengthy"

7  mediation sessions, and assessment of the "risks of further

8  litigation of this matter," including "risks to maintenance of

9  class certification, risk of loss on the merits at trial, and

10 risk of an appeal."  (Id. at 2-3, 15.)  Because the court finds

11 no reason to doubt plaintiff or class counsel's vigor in

12 representing the class, it holds that they have satisfied Rule

13 23(a)'s adequacy assessment for purposes of preliminary approval.

14              2.   Rule 23(b)

15              An action that meets all the prerequisites of Rule

16 23(a) may be certified as a class action only if it also

17 satisfies the requirements of one of the three subdivisions of

18 Rule 23(b).  Leyva v. Medline Indus. Inc., 716 F.3d 510, 512 (9th

19 Cir. 2013).  Plaintiff seeks certification under Rule 23(b)(3),

20 which provides that a class action may be maintained only if (1)

21 "the court finds that questions of law or fact common to class

22 members predominate over questions affecting only individual

23 members" and (2) "that a class action is superior to other

24 available methods for fairly and efficiently adjudicating the

25 controversy."  Fed. R. Civ. P. 23(b)(3).

26              "Because Rule 23(a)(3) already considers commonality,

27 the focus of the Rule 23(b)(3) predominance inquiry is on the

28 balance between individual and common issues."  Murillo, 266

11

1   F.R.D. at 476 (citing <u>Hanlon</u>, 150 F.3d at 1022); <u>see also</u>

2   <u>Windsor</u>, 521 U.S. at 623 ("The Rule 23(b)(3) predominance inquiry

3   tests whether proposed classes are sufficiently cohesive to

4   warrant adjudication by representation.").

5           As explained in the 'commonality' analysis, the claims

6   of class members in this case appear to raise similar, if not

7   identical questions of fact and law.  Though the amount of time

8   worked during the class period will likely differ from class

9   member to class member, the Ninth Circuit has held that

10  differences in damage calculations do not defeat a finding of

11  predominance.  <u>Yokoyama v. Midland Nat. Life Ins. Co.</u>, 594 F.3d

12  1087, 1089 (9th Cir. 2010) ("[T]he amount of damages is

13  invariably an individual question and does not defeat class

14  action treatment." (internal quotation marks and citation

15  omitted)).  Accordingly, the court finds that common questions of

16  fact and law predominate over individual issues in this case.

17          With respect to whether "a class action is superior to

18  other available methods for fairly and efficiently adjudicating

19  the [present] controversy," Rule 23(b)(3) sets forth four non-

20  exhaustive factors to consider:

21          (A)  the  class  members'  interests  in  individually
            controlling  the  prosecution  or  defense  of  separate
22          actions;  (B)  the  extent  and  nature  of  any  litigation
            concerning  the  controversy  already  begun  by  or  against
23          class  members;  (C)  the  desirability  or  undesirability
            of  concentrating  the  litigation  of  the  claims  in  the
24          particular  forum;  and  (D)  the  likely  difficulties  in
            managing  a  class  action.
25
    Fed. R. Civ. P. 23(b) (3).  The parties settled this action prior
26
    to certification, making factors (C) and (D) inapplicable.  <u>See</u>
27
    <u>Murillo</u>, 266 F.R.D. at 477 (citing <u>Windsor</u>, 521 U.S. at 620).
28
                                    12

1        With respect to factor (A), class members' interest in

2   individually litigating this case is likely low in light of the

3   significant time and financial cost that individual litigation

4   would likely require.  (See Pl.'s Mem. at 16 (plaintiff estimates

5   that "[w]ithout settlement, the duration of further litigation is

6   very likely to be several more years").)  Moreover, defendant

7   contends that "a number of defenses" it intends to assert in this

8   litigation--such as failure to exhaust administrative remedies,

9   failure to mitigate, time bar under various statutes of

10  limitations, and reimbursement of the allegedly unreimbursed

11  business expenses--"present serious threats to the claims of

12  Plaintiff and the other Class Members."  (Id. at 15; see also

13  Answer at 6-10 (Docket No. 31).)  In light of these obstacles,

14  plaintiff's representation that the settlement amount constitutes

15  at least 33% of the maximum possible recovery further counsels

16  against individual litigation.  See Rodriguez v. W. Pub. Corp.,

17  No. CV05-3222 R (MCX), 2007 WL 2827379, at *9 (C.D. Cal. Sept.

18  10, 2007) (a "settlement amount representing 33% of maximum

19  possible recovery was well within a reasonable range" (quoting In

20  re Warfarin Sodium Antitrust Litig., 212 F.R.D. 231, 257 (D. Del.

21  2002))), rev'd on other grounds in Rodriguez v. W. Publ'g Corp.,

22  563 F.3d 948 (9th Cir. 2009).

23       With respect to (B), the court is unaware of any

24  concurrent litigation already begun by class members regarding

25  plaintiff's claims.[5]  Objectors at the final fairness hearing may

26  _____

27       [5]   Defendant recently settled a similar case before this
    court--Garnett v. ADT, LLC, No. CV 2:14-02851 WBS AC, 2016 WL
28  3538354 (E.D. Cal. June 28, 2016).  Garnett, however, dealt with
    defendant's alleged failure to reimburse vehicle expenses of and

                                    13

1  reveal otherwise.  <u>See</u> <u>Alberto</u>, 252 F.R.D. at 664.

2  Because common issues of fact and law predominate in

3  this action, and because the class action device appears to be

4  the superior method of adjudicating the claims in this case, the

5  court finds that plaintiff has satisfied Rule 23(b)'s

6  certification requirement for purposes of preliminary approval.

7  3.  <u>Rule 23(c)(2) Notice Requirements</u>

8  If the court certifies a class under Rule 23(b)(3), it

9  "must direct to class members the best notice that is practicable

10  under the circumstances, including individual notice to all

11  members who can be identified through reasonable effort."  Fed.

12  R. Civ. P. 23(c)(2)(B).  Rule 23(c)(2) governs both the form and

13  content of a proposed notice.  <u>See</u> <u>Ravens v. Iftikar</u>, 174 F.R.D.

14  651, 658 (N.D. Cal. 1997) (citing <u>Eisen v. Carlisle & Jacquelin</u>,

15  417 U.S. 156, 172–77 (1974)).  Although that notice must be

16  "reasonably certain to inform the absent members of the plaintiff

17  class," actual notice is not required.  <u>Silber v. Mabon</u>, 18 F.3d

18  1449, 1454 (9th Cir. 1994) (citation omitted).

19  The parties agree that Dahl Administration ("Dahl")

20  will provide notice to the class and administer the claims

21  process.  (Pl.'s Mem. at 9.)  The parties settled on Dahl after

22  seeking out and reviewing bids from "five established providers

23  of the required services."  (<u>Id.</u> at 11.)

24  The parties agree that within fourteen calendar days

25  _____

26  provide compliant wage statements to its sales representatives
and sales managers.  <u>See</u> <u>id.</u> at *6-7.  As the court noted in the

27  July 28, 2015 Order in this case, this case deals with different
factual allegations and claims.  (<u>See</u> July 28, 2015 Order at 2

28  (Docket No. 25).)

after preliminary approval, defendant will provide Dahl with a
list of the last-known names, addresses, telephone numbers,
social security numbers, and estimated recovery of each class
member.  (Id. at 12.)  Dahl will update the addresses "using all
customary procedures."  (Id.)  Dahl will then "deliver the Class
Notice and Claim Form to Class Members via first-class mail
within twenty days of the Court's Order granting Preliminary
Approval."  (Id. 11-12.)  "Any Notices returned as undeliverable
will then be re-mailed to the forwarding address provided by the
U.S. Postal Service or to an address located by the Settlement
Administrator using customary skip-tracing methods."  (Id. at
12.)

        The class notice will explain: (1) the nature of this
action, (2) the definition of the class, (3) plaintiff's claims,
(4) the settlement amount and its contemplated deductions, (5)
the number of weeks each class member worked during the class
period and their estimated minimum settlement award; (6) the
binding effect of participating in the settlement, (7) the class
member's right to enter an appearance through an attorney; (8)
the class member's right to request exclusion from the class, (9)
the timing and procedure for requesting exclusion, and (10) the
time and place of the final approval hearing.  (Id. at 2, 11.)
The content of this notice satisfies Rule 23(c)(2)(B).  See Fed.
R. Civ. P. 23(c)(2)(B); see also Churchill Vill., L.L.C. v. Gen.
Elec., 361 F.3d 566, 575 (9th Cir. 2004) ("Notice is satisfactory
if it 'generally describes the terms of the settlement in
sufficient detail to alert those with adverse viewpoints to
investigate and to come forward and be heard.'" (quoting Mendoza

15

1  v. Tucson Sch. Dist. No. 1, 623 F.2d 1338, 1352 (9th Cir.
2  1980))).

3          The court is also satisfied with the parties' claim
4  form, which reports the number of weeks worked during the class
5  period, provides an estimated settlement amount, specifies that
6  submission of the form is necessary for receipt of payment, and
7  provides the deadline for submission. (Settlement Agreement Ex.
8  A, Claim Form at 1-2.) Class members who want to make a claim
9  for a different settlement sum based on a different number of
10  weeks worked may set forth the information he or she believes to
11  be correct on the claim form and submit supporting documentation.
12  (Id. at 2.)

13          The court is satisfied that this system is reasonably
14  calculated to provide notice to class members and is the best
15  form of notice available under the circumstances.

16      B.   Preliminary Settlement Approval

17          After determining that the proposed class satisfies the
18  requirements of Rule 23, the court must determine whether the
19  terms of the parties' settlement appear fair, adequate, and
20  reasonable. See Fed. R. Civ. P. 23(e)(2); Hanlon, 150 F.3d at
21  1026. This process requires the court to "balance a number of
22  factors," including:

23          the strength of the plaintiff's case; the risk,
            expense, complexity, and likely duration of further
24          litigation; the risk of maintaining class action
            status throughout the trial; the amount offered in
25          settlement; the extent of discovery completed and the
            stage of the proceedings; the experience and views of
26          counsel; the presence of a governmental participant;
            and the reaction of the class members to the proposed
27          settlement.

28  Hanlon, 150 F.3d at 1026. Many of these factors cannot be

1   considered until the final fairness hearing, so the court need

2   only conduct a preliminary review at this time to resolve any

3   "glaring deficiencies" in the settlement agreement before

4   authorizing notice to class members.  Ontiveros v. Zamora, Civ.

5   No. 2:08-567 WBS DAD, 2014 WL 3057506, at *12 (E.D. Cal. July 7,

6   2014) (citing Murillo, 266 F.R.D. at 478).

7        At the preliminary stage, "the court need only

8   'determine whether the proposed settlement is within the range of

9   possible approval.'"  Murillo, 266 F.R.D. at 479 (quoting

10  Gautreaux v. Pierce, 690 F.2d 616, 621 n.3 (7th Cir. 1982)).

11  This generally requires consideration of "whether the proposed

12  settlement discloses grounds to doubt its fairness or other

13  obvious deficiencies, such as unduly preferential treatment of

14  class representatives or segments of the class, or excessive

15  compensation of attorneys."  Id. (quoting W. v. Circle K Stores,

16  Inc., Civ. No. 04-0438 WBS GGH, 2006 WL 1652598, at *11-12 (E.D.

17  Cal. June 13, 2006)).  "District Courts have preliminarily

18  approved class settlements with minor defects while giving the

19  parties the opportunity to correct those defects."  Hofmann v.

20  Dutch LLC, No. 314CV02418GPCJLB, 2016 WL 1644700, at *8 (S.D.

21  Cal. Apr. 26, 2016).

22        1.   Negotiation of the Settlement Agreement

23        Courts often begin by examining the process that led to

24  the settlement's terms to ensure that those terms are "the result

25  of vigorous, arms-length bargaining" and then turn to the

26  substantive terms of the agreement.  See, e.g., W., 2006 WL

27  1652598, at *11-12; In re Tableware Antitrust Litig., 484 F.

28  Supp. 2d 1078, 1080 (N.D. Cal. 2007) ("[P]reliminary approval of

1  a settlement has both a procedural and a substantive
2  component.").

3      Here, the parties reached the settlement agreement
4  after engaging in "voluminous" discovery, "diligent[]"
5  investigation, motion practice, assessment of the "risks of
6  further litigation," and two "lengthy" mediation sessions at
7  which "they each aggressively advocated for their respective
8  positions." (Id. at 2-3, 15.)  In light of these efforts, the
9  court finds no reason to doubt the parties' representation that
10  the settlement was the result of vigorous, arms-length
11  bargaining.  See La Fleur v. Med. Mgmt. Int'l, Inc., Civ. No.
12  5:13-00398, 2014 WL 2967475, at *4 (N.D. Cal. June 25, 2014)
13  ("Settlements reached with the help of a mediator are likely non-
14  collusive.")

15          2.   Amount Recovered and Distribution

16      In determining whether a settlement agreement is
17  substantively fair to the class, the court must balance the value
18  of expected recovery against the value of the settlement offer.
19  See Tableware, 484 F. Supp. 2d at 1080.  This inquiry may involve
20  consideration of the uncertainty class members would face if the
21  case were litigated to trial.  See Ontiveros, 2014 WL 3057506, at
22  *14.

23      Here, plaintiff settled the case for $1,060,000, a sum
24  which represents at least 33% of the maximum possible recovery.
25  (See Pl.'s Mem. at 16.)  That settlement amount is "well within a
26  reasonable range when compared with recovery percentages in other
27  class action settlements."  Rodriguez, 2007 WL 2827379, at *9
28  (quoting In re Warfarin Sodium Antitrust Litig., 212 F.R.D. at

1  257).   The parties decided upon that amount after considering

2  "payroll, time punch and commission earning data." (Pl.'s Mem.

3  at 4.)

4          The court notes that the settlement agreement requires

5  class members to take the affirmative step of <u>opting in</u> to

6  receive payment and <u>opting out</u> if they do not wish to be part of

7  the settlement class.  (<u>See</u> Settlement Agreement Ex. B, Notice of

8  Class Action Settlement at 1-3.)  Class members who do not

9  request to be excluded will release defendant from the claims

10  asserted in this action.  (<u>Id.</u> at 3.)  Therefore, there is a risk

11  that some class members will opt into the judgment by default,

12  thus releasing defendant, but also receive no recovery because

13  they fail to timely return the claim form.

14          While the settlement amount represents only a fraction

15  of the possible recovery and the agreement contains a potentially

16  unfair opt-in/opt-out requirement, there are many uncertainties

17  associated with further litigation that justify this settlement.

18  Specifically, defendant asserts some twenty-three defenses

19  against plaintiff's claims, such as failure to exhaust

20  administrative remedies, failure to mitigate, time bar under

21  various statutes of limitations, and reimbursement of the

22  allegedly unreimbursed business expenses.  (<u>See</u> Answer at 6-10.)

23  Defendant believes these and other defenses "present serious

24  threats to the claims of Plaintiff and the other Class Members."

25  (Pl.'s Mem. at 15.)  Without settlement, plaintiff estimates that

26  "duration of [this] litigation is very likely to be several more

27  years." (<u>Id.</u> at 16.)

28          In light of these uncertainties, the court will grant

19

1    preliminary approval to the settlement agreement because the

2    settlement amount is within the range of possible approval.

3    Murillo, 266 F.R.D. at 479 (quoting Gautreaux, 690 F.2d at 621

4    n.3).

5            3. Attorneys' Fees

6            If a negotiated class action settlement includes an

7    award of attorneys' fees, that fee award must be evaluated in the

8    overall context of the settlement.  Knisley v. Network Assocs.,

9    312 F.3d 1123, 1126 (9th Cir. 2002); Monterrubio, 291 F.R.D. at

10   455.  The court "ha[s] an independent obligation to ensure that

11   the award, like the settlement itself, is reasonable, even if the

12   parties have already agreed to an amount."  In re Bluetooth

13   Headset Prods. Liab. Litig., 654 F.3d 935, 941 (9th Cir. 2011).

14           The settlement agreement provides that class counsel

15   will apply to the court for a fee award of 33% of the gross

16   settlement amount, or $349,800.  (Settlement Agreement ¶ 5.1.)

17   Attorneys' fees are to be paid from the settlement amount.  (Id.)

18   Defendant agrees not to oppose class counsel's petition for the

19   fee award so long as the award does not exceed 33%.  (Id.)  The

20   parties agree that the settlement agreement is not contingent

21   upon court approval of the full amount of the requested

22   attorneys' fees and that a court order granting a lesser fee will

23   not invalidate the settlement agreement.  (Id.)

24           In deciding the attorneys' fees motion, the court will

25   have the opportunity to assess whether the requested fee award is

26   reasonable by multiplying a reasonable hourly rate by the number

27   of hours class counsel reasonably expended.  See Van Gerwen v.

28   Gurantee Mut. Life. Co., 214 F.3d 1041, 1045 (9th Cir. 2000).  As

1    part of this lodestar calculation, the court may take into

2    account factors such as the "degree of success" or "results

3    obtained" by class counsel.  See Cunningham v. County of Los

4    Angeles, 879 F.2d 481, 488 (9th Cir. 1988).  If the court, in

5    ruling on the fees motion, finds that the amount of the

6    settlement warrants a fee award at a rate lower than what class

7    counsel requests, then it will reduce the award accordingly.  The

8    court will therefore not evaluate the fee award at length here in

9    considering whether the settlement is adequate.

10        IT IS THEREFORE ORDERED that plaintiff's motion for

11   preliminary certification of a conditional settlement class and

12   preliminary approval of the class action settlement be, and the

13   same hereby is, GRANTED.

14        IT IS FURTHER ORDERED THAT:

15        (1) The claims administrator shall notify class members

16   of the settlement agreement in the manner specified within the

17   settlement agreement (Docket No. 46-6);

18        (2) Class members who want to receive a settlement

19   payment under the settlement agreement must complete and postmark

20   the claim form for delivery to the address indicated on the claim

21   form no later than forty-five calendar days after the date the

22   class notices are mailed;

23        (3) Class members who want to object to the settlement

24   agreement must postmark a written objection for delivery to the

25   address indicated on the claim form no later than forty-five

26   calendar days after the date the class notices are mailed.  The

27   objection must include the objecting person's full name, current

28   address, telephone number, signature, a statement that the person

1    qualifies as a class member, all objections and reasons for the

2    objections, and any supporting papers.  Any class member who

3    submits an objection remains eligible to submit a claim form and

4    receive monetary compensation;

5           (4) Class members who fail to object to the settlement

6    agreement in the manner specified above shall be deemed to have

7    waived their right to object to the settlement agreement and any

8    of its terms;

9           (5) Class members who want to be excluded from the

10   settlement must complete and postmark the claim form for delivery

11   to the address indicated on the claim form no later than forty-

12   five calendar days after the date the class notices are mailed.

13   Class members who opt out shall not receive any settlement

14   proceeds or be bound by any of the terms of the settlement,

15   including its release provisions;

16          (6) The settlement class is provisionally certified as

17   all non-exempt individuals employed by ADT in California as high

18   volume installers who were paid for services performed at any

19   time from April 18, 2013 to the date this Order is signed;

20          (7) plaintiff Ricardo Castillo is conditionally

21   certified as the class representative to implement the parties'

22   settlement in accordance with the settlement agreement.  Alan

23   Harris and Priya Mohan of Harris & Ruble, and David S. Harris of

24   North Bay Law Group, are conditionally appointed as class

25   counsel.  Plaintiff and counsel must fairly and adequately

26   protect the class's interests;

27          (8) The parties agree that Dahl Administration will

28   serve as the claims administrator;

1          (9) If the settlement agreement terminates for any

2    reason, the following will occur: (a) class certification will be

3    automatically vacated; (b) plaintiff will stop functioning as

4    class representative; and (c) this action will revert to its

5    previous status in all respects as it existed immediately before

6    the parties executed the settlement agreement;

7          (10) All discovery and pretrial proceedings and

8    deadlines are stayed and suspended until further notice from the

9    court, except for such actions as are necessary to implement the

10   settlement agreement and this Order;

11         (11) The final fairness hearing is set for January 23,

12   2017 at 1:30 p.m., in Courtroom No. 5, to determine whether the

13   settlement agreement should be finally approved as fair,

14   reasonable, and adequate;

15         (12) The following are the certain associated dates in

16   this settlement:

17              (a) The claims administrator shall send notice of

18   the settlement to the settlement class pursuant to the parties'

19   notice plan by November 21, 2016;

20              (b) Class members shall complete and postmark

21   objections, requests for exclusion, and claim forms by January 5,

22   2017;

23              (c) Plaintiff shall file a motion for attorneys'

24   fees no later than December 29, 2016;

25         (13) The parties shall file briefs in support of the

26   final approval of the settlement no later than December 29, 2016.

27   Dated:   October 31, 2016

28

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE