UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| RICARDO CASTILLO, on behalf of himself and all others similarly situated,<br><br>            Plaintiff,<br><br>    v.<br><br>ADT, LLC, and DOES 1 through 100, inclusive,<br><br>            Defendant. | CIV. NO. 2:15-383 WBS DB<br><br>MEMORANDUM AND ORDER RE: MOTIONS FOR FINAL APPROVAL OF CLASS SETTLEMENT AND APPROVAL OF ATTORNEYS' FEES, COSTS, AND INCENTIVE AWARD |

----oo0oo----

        Plaintiff Ricardo Castillo brought this class action against defendant, ADT, alleging that defendant failed to pay him and other class members for off-the-clock work, overtime, and business expenses in violation of California wage and hour laws. (Second Am. Compl. ("SAC") (Docket No. 42).)  Before the court are plaintiff's Motions for final approval of class settlement, (Pl.'s Mot. for Final Approval of Settlement (Docket No. 51)),

1

1    and approval of attorneys' fees, costs, and an incentive award,

2    (Pl.'s Mot. for Attorneys' Fees (Docket No. 50)).

3    I.    Factual and Procedural Background

4          Defendant provides electronic security, alarm, and home

5    and business automation services throughout the United States.

6    (SAC ¶ 10.)  It operates some twenty locations in California,

7    each of which employs "non-exempt High Volume Installers."  (See

8    id. ¶¶ 10, 23.)

9          Plaintiff, a non-exempt high volume installer, alleges

10   that defendant violated various provisions of the California

11   Labor Code by paying him and other high volume installers

12   pursuant to a wage policy that fails to compensate them for off-

13   the-clock work, such as traveling between customer sites and

14   picking up supplies from warehouses.  (Id. ¶ 17.)  By underpaying

15   them pursuant to such a policy, plaintiff alleges, defendant also

16   under-calculates their overtime pay, which must be "at least one

17   and one-half times [their] regular rate of pay" under California

18   law.  (Id. ¶ 4.)  Plaintiff also alleges that defendant failed to

19   "reimburse [him and other installers] for necessary business

20   expenses and provide compliant wage statements."  (Id. ¶ 5.)

21         Plaintiff brought this action on behalf of himself and

22   other high volume installers who were paid on a similar basis.

23   (See id. ¶ 4.)  The parties litigated this case for over a year

24   before reaching a settlement on April 24, 2016 before mediator

25   Alan Berkowitz.  (Docket No. 44 at 3-4.)

26         After reaching settlement, the parties filed a motion

27   for preliminary approval of settlement on September 30, 2016.

28   (Id.)  The court granted preliminary approval and provisionally

1  certified the following class: "[A]ll non-exempt individuals

2  employed by ADT in California as high volume installers who were

3  paid for services performed at any time from April 18, 2013 to

4  [November 1, 2016]."  (Nov. 1, 2016 Order at 22 (Docket No. 48).)

5  The court appointed plaintiff as class representative; Alan

6  Harris and Priya Mohan of the firm of Harris & Ruble and David

7  Harris of North Bay Law Group as class counsel; and Dahl

8  Administration as claims administrator.  (Id.)

9       The court also approved plaintiff's opt-in/opt-out form

10  and notice of settlement, (id. at 15-16); directed the claims

11  administrator to send notice of settlement to class members by

12  November 21, 2016, (id. at 23); directed class members to file

13  claims, objections, and opt-outs by January 5, 2017, (id.);

14  directed plaintiff to file a motion for attorneys' fees by

15  December 29, 2016, (id.); and directed the parties to file briefs

16  in support of final approval of settlement by December 29, 2016,

17  (id.).  The final fairness hearing in this action took place on

18  January 23, 2017 at 1:30 p.m.

19       After conducting the final fairness hearing and

20  carefully considering the settlement terms, the court now

21  addresses whether this action should receive final class

22  certification, whether the proposed settlement should receive

23  final approval, and whether plaintiff's request for attorneys'

24  fees, costs, and an incentive award should be granted.

25  II.  Discussion

26       The Ninth Circuit has declared that a strong judicial

27  policy favors settlement of class actions.  Class Plaintiffs v.

28  City of Seattle, 955 F.2d 1268, 1276 (9th Cir. 1992).

1    Nevertheless, where, as here, "the parties reach a settlement

2    agreement prior to class certification, courts must peruse the

3    proposed compromise to ratify both [1] the propriety of the

4    certification and [2] the fairness of the settlement." Staton v.

5    Boeing Co., 327 F.3d 938, 952 (9th Cir. 2003).

6         The first part of the inquiry requires the court to

7    "pay 'undiluted, even heightened, attention' to class

8    certification requirements" because, unlike in a fully litigated

9    class action suit, the court "will lack the opportunity . . . to

10   adjust the class, informed by the proceedings as they unfold."

11   Amchem Prods. Inc. v. Windsor, 521 U.S. 591, 620 (1997); see

12   Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998).

13        In the second stage, the court holds a fairness hearing

14   where the court entertains any class member's objections to (1)

15   the treatment of this litigation as a class action and (2) the

16   terms of the settlement. See Diaz v. Tr. Territory of Pac.

17   Islands, 876 F.2d 1401, 1408 (9th Cir. 1989) (holding that a

18   court is required to hold a hearing prior to final approval of a

19   dismissal or compromise of class claims to "inquire into the

20   terms and circumstances of any dismissal or compromise to ensure

21   it is not collusive or prejudicial"). Following such a hearing,

22   the court must reach a final determination as to whether the

23   court should allow the parties to settle the class action

24   pursuant to the agreed-upon terms. See Telecomms. Coop. v.

25   DIRECTV, Inc., 221 F.R.D. 523, 525 (C.D. Cal. 2004).

26        A.   Class Certification

27        A class action will be certified only if it meets the

28   four prerequisites identified in Rule 23(a) and fits within one

                                  4

1   of the three subdivisions of Rule 23(b).  Fed. R. Civ. P. 23(a)-

2   (b).  Although a district court has discretion in determining

3   whether the moving party has satisfied each Rule 23 requirement,

4   the court must conduct a rigorous inquiry before certifying a

5   class.  See Califano v. Yamasaki, 442 U.S. 682, 701 (1979).

6                     1.    Rule 23(a) Requirements

7           Rule 23(a) restricts class actions to cases where:

8           (1) the class is so numerous that joinder of all
            members is impracticable; (2) there are questions of
9           law or fact common to the class; (3) the claims or
            defenses of the representative parties are typical of
10          the claims or defenses of the class; and (4) the
            representative parties will fairly and adequately
11          protect the interests of the class.

12  Fed. R. Civ. P. 23(a).  In the court's Order granting preliminary

13  approval of settlement, the court found that the putative class

14  satisfied the Rule 23(a) requirements.  Because the court is not

15  aware of any facts that would alter its initial Rule 23(a)

16  analysis, the court finds that the class definition proposed by

17  plaintiff meets the requirements of Rule 23(a).

18                    2.    Rule 23(b) Requirements

19          An action that meets all of the prerequisites of Rule

20  23(a) may be certified as a class action only if it also

21  satisfies the requirements of one of the three subdivisions of

22  Rule 23(b).  Leyva v. Medline Indus. Inc., 716 F.3d 510, 512 (9th

23  Cir. 2013).  Plaintiff seeks certification under Rule 23(b)(3),

24  which provides that a class action may be maintained only if (1)

25  "the court finds that questions of law or fact common to class

26  members predominate over questions affecting only individual

27  members" and (2) "a class action is superior to other available

28  methods for fairly and efficiently adjudicating the controversy."

1  Fed. R. Civ. P. 23(b)(3).

2       In its Order granting preliminary approval of

3  settlement, the court found that both prerequisites of Rule

4  23(b)(3) were satisfied.  The court is not aware of any facts

5  that would alter this conclusion.  Because the settlement class

6  satisfies both Rule 23(a) and 23(b)(3), the court will grant

7  final class certification in this action.

8              3.    Rule 23(c)(2) Notice Requirements

9       If the court certifies a class under Rule 23(b)(3), it

10 "must direct to class members the best notice that is practicable

11 under the circumstances, including individual notice to all

12 members who can be identified through reasonable effort."  Fed.

13 R. Civ. P. 23(c)(2)(B).  Rule 23(c)(2) governs both the form and

14 content of a proposed notice.  See Ravens v. Iftikar, 174 F.R.D.

15 651, 658 (N.D. Cal. 1997) (citing Eisen v. Carlisle & Jacquelin,

16 417 U.S. 156, 172-77 (1974)).  Although that notice must be

17 "reasonably certain to inform the absent members of the plaintiff

18 class," actual notice is not required.  Silber v. Mabon, 18 F.3d

19 1449, 1454 (9th Cir. 1994) (citation omitted).

20      The parties agreed that Dahl Administration would serve

21 as claims administrator in this action.  (Docket No. 44 at 9.)

22      Defendant identified and provided Dahl with the records

23 of 427 class members on November 17, 2016.  (Decl. of Kelly Kratz

24 ("Kratz Decl.") ¶ 4 (Docket No. 54-1).)  Dahl obtained the most

25 current mailing addresses for each class member using the

26 National Change of Address database maintained by the United

27 States Postal Service ("USPS").  (Id. ¶ 5.)  On November 21,

28 2016, Dahl mailed notice of settlement to the 427 class members

1   via first class USPS mail.[1]  (Id. ¶ 6.)  Dahl sent a second

2   notice on December 21, 2016 to the 285 class members who had not

3   responded by that point.  (Id. ¶ 7.)

4        Of the 427 class members identified and sent notice,

5   287 filed timely claim forms.  (Jan. 13, 2017 Decl. of Alan

6   Harris ("Harris Decl. II") ¶ 3 (Docket No. 54).)  Four class

7   members filed late claim forms, which the parties have agreed to

8   accept.  (See id. ¶ 4; Jan. 19, 2017 Decl. of Alan Harris

9   ("Harris Decl. III") at 2 (Docket No. 55).)  Counting the late

10   claim forms, the class settlement participation rate in this

11   action was 68%.  Seven class members[2] decided to opt out, and no

12   class member objected to the settlement.  (Harris Decl. II ¶ 5.)

13        The notice sent by Dahl explained the proceedings in

14   this action; who comprised the settlement class; the claim form

15   requirement and the binding effect of opting in; the procedure

16   for opting out or objecting; when and where the final fairness

17   hearing would be held; and how to contact class counsel should

18   the class member have any questions or wish to request more

19   information.  (See Kratz Decl. Ex. A, Notice of Settlement.)  The

20   notice also explains that class members' individual settlement

21   awards would be determined based on number of weeks worked during

22

23        [1]   Ten class notices were returned as undeliverable.
(Kratz Decl. ¶ 8.)  Dahl forwarded those notices to a
24   professional search firm for tracing.  (Id.)  Plaintiff stated at
the final fairness hearing that seven of the ten undeliverable
25   notices were re-mailed pursuant to updated addresses.  The
remaining three notices did not have updated addresses and could
26   not be re-sent.  (Id.)

27

28        [2]   The parties stated at the final fairness hearing that
two of the seven opt-out members may decide to re-opt in.

the class period, and that weeks worked during the 'piece rate'
period would be compensated differently from weeks worked during
the 'hourly rate' period.[3]  (See id. at 4-5.)

The court is satisfied that the parties' notice plan
was "best notice that [was] practicable under the circumstances,"
and that the content of their notice satisfied Rule 23(c)(2)(B).
See Fed. R. Civ. P. 23(c)(2)(B); see also Churchill Vill., L.L.C.
v. Gen. Elec., 361 F.3d 566, 575 (9th Cir. 2004) ("Notice is
satisfactory if it generally describes the terms of the
settlement in sufficient detail to alert those with adverse
viewpoints to investigate and to come forward and be heard."
(citation omitted)).

B.   Rule 23(e): Fairness, Adequacy, and Reasonableness of
     Proposed Settlement

Having determined class treatment to be warranted and
notice to be adequate, the court must now determine whether the

_____

[3]   Pursuant to their settlement, the parties agree that
the class period will be comprised of two sub-periods: (1) a
'piece rate' period, during which defendant allegedly paid class
members pursuant to a piece rate system; and (2) an 'hourly rate'
period, during which defendant allegedly paid class members
pursuant to an hourly rate system. (Dec. 29, 2016 Decl. of Alan
Harris ("Harris Decl. I") Ex. 1, Settlement Agreement at 8-9
(Docket No. 53-1).)  Ninety percent of class funds will go
towards compensating weeks worked during the 'piece rate' period,
and ten percent of class funds will go towards compensating weeks
worked during the 'hourly rate' period. (Id.)  The implication
of this split is that defendant's 'piece rate' system
undercompensated class members more severely than its 'hourly
rate' system did.  (See Harris Decl. I ¶ 10 ("The plan of
allocation was negotiated in such a way as to fairly allocate the
recovery among Class Members in accordance with Plaintiff's
theories of potential damages as well as the relative strengths
and weaknesses of the claims . . . .") (Docket No. 53).)  The
court finds no reason to doubt the fairness of this allocation.

1 terms of the parties' settlement are fair, adequate, and

2 reasonable.  See Fed. R. Civ. P. 23(e)(2); Hanlon, 150 F.3d at

3 1026.  This process requires the court to "balance a number of

4 factors," including:

> the strength of the plaintiff's case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

10 Hanlon, 150 F.3d at 1026.  But see In re Bluetooth Headset Prods.

11 Liab. Litig., 654 F.3d 935, 946 (9th Cir. 2011) ("The factors in

12 a court's fairness assessment will naturally vary from case to

13 case.").

14         1.   Strength of Plaintiff's Case

15         An important consideration is the strength of

16 plaintiff's case balanced against the amount offered in the

17 settlement.  DIRECTV, 221 F.R.D. at 526.  The district court,

18 however, is not required to reach any ultimate conclusions on the

19 merits of the case, "for it is the very uncertainty of outcome in

20 litigation and avoidance of wastefulness and expensive litigation

21 that induce consensual settlements."  Officers for Justice v.

22 Civil Serv. Comm'n of the City & Cnty. of SF, 688 F.2d 615, 625

23 (9th Cir. 2004).

24         The terms of the parties' settlement compare favorably

25 to the uncertainties of plaintiff's case.  If the parties had not

26 settled, defendant would have opposed plaintiff's request for

27 class certification, contested the merits of his claims at

28 summary judgment and/or trial, and appealed any adverse judgment

9

1  the court issued.  (<u>See</u> Pl.'s Mot. for Final Approval of

2  Settlement at 14.)  In doing so, defendant would have asserted

3  some twenty-three defenses against plaintiff's claims, such as

4  failure to exhaust administrative remedies, failure to mitigate

5  damages, time bar under various statutes of limitations, and

6  inaccuracy of various allegations made in plaintiff's second

7  amended Complaint.  (<u>See</u> Answer at 6-10 (Docket No. 31).)  These

8  defenses, defendant contends, "present serious threats to the

9  claims of Plaintiff and the other Class Members."  (Pl.'s Mot.

10  for Final Approval of Settlement at 14.)

11       Even if plaintiff succeeded on the merits of his

12  claims, he may have faced difficulty recovering statutory damages

13  and civil penalties from defendant in light of recent cases from

14  courts in this circuit holding that such damages and penalties

15  cannot be "stack[ed]" on top of each other.  <u>See</u> <u>Smith v. Lux</u>

16  <u>Retail N. Am., Inc.</u>, No. C 13-01579 WHA, 2013 WL 2932243, at *3

17  (N.D. Cal. June 13, 2013).

18       In light of the uncertainties plaintiff would have

19  faced had he not settled this case, the court finds that the

20  proposed settlement, which will provide an average recovery

21  totaling in the thousands of dollars to participating class

22  members, is a fair resolution of the claims brought in this case.

23       2.   <u>Risk, Expense, Complexity, and Likely Duration of</u>

24            <u>Further Litigation</u>

25       As explained above, plaintiff would have faced risk

26  with respect to defendant's defenses and recovering damages had

27  he not settled this case.  Defendant's representation that it

28  would have opposed class certification, contested the merits of

                                    10

1   this case at summary judgment and/or trial, and appealed any

2   adverse judgment, would have resulted in "several more years" of

3   litigation, at the end of which "any damage/penalty [recovered by

4   plaintiff and the class may] be dwarfed by the fees and costs

5   expended to obtain it."  (Pl.'s Mot. for Final Approval of

6   Settlement at 15-16.)  Accordingly, the risks, expense, and

7   duration of further litigation in this matter weigh in favor of

8   approving the settlement.  See Nat'l Rural Telecommunications

9   Coop. v. DIRECTV, Inc., 221 F.R.D. 523, 526 (C.D. Cal. 2004)

10  ("[U]nless the settlement is clearly inadequate, its acceptance

11  and approval are preferable to lengthy and expensive litigation

12  with uncertain results.").

13          3.   Risk of Maintaining Class Action Status Throughout

14               Trial

15          Though defendant has agreed to class certification for

16  purposes of this settlement, it "intends to vigorously oppose

17  class certification" should this case proceed on the merits.

18  (Pl.'s Mot. for Final Approval of Settlement at 15.)  Based on

19  plaintiff's allegations, it appears that class certification may

20  be warranted in this case.  (See SAC ¶ 4 (alleging that defendant

21  "pays employees an impermissibly low overtime rate" "as a matter

22  of company policy").)  However, plaintiff acknowledges that there

23  is nevertheless "risk that class-wide status may be denied"

24  should this case proceed on the merits and defendant contest

25  class certification.  (Pl.'s Mot. for Final Approval of

26  Settlement at 15-16.)  Because "class certification is not

27  guaranteed," Morales v. Conopco, Inc., No. 2:13-2213 WBS EFB,

28  2016 WL 6094504, at *5 (E.D. Cal. Oct. 18, 2016), this factor

11

1    weighs in favor of approving the settlement.

2              4.   Amount Offered in Settlement

3              "In assessing the consideration obtained by the class

4    members in a class action settlement, it is the complete package

5    taken as a whole, rather than the individual component parts,

6    that must be examined for overall fairness." Ontiveros v.

7    Zamora, 303 F.R.D. 356, 370 (E.D. Cal. 2014).  In determining

8    whether a settlement agreement is substantively fair to the

9    class, the court must balance the value of expected recovery

10   against the value of the settlement offer.  See In re Tableware

11   Antitrust Litig., 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007).

12   This inquiry may involve consideration of the uncertainty class

13   members would face if the case were litigated to trial.  See

14   Ontiveros, 303 F.R.D. at 370-71.

15             The gross settlement amount in this case is $1,060,000.

16   (Dec. 29, 2016 Decl. of Alan Harris ("Harris Decl. I") Ex. 1,

17   Settlement Agreement ¶ 2.21 (Docket No. 53-1).)  The parties have

18   agreed to distribute that amount as follows: (1) class counsel

19   will receive a fee of $349,800, equal to 33% of the gross

20   settlement amount, (id. ¶ 5.1); (2) plaintiff will receive an

21   incentive award of $5,000, (id. ¶ 5.3); (3) $14,080 will go

22   towards litigation costs, (Harris Decl. III at 2-3); (4) $3,750

23   will be paid to the California Labor & Workforce Development

24   Agency in satisfaction of defendant's alleged penalties under the

25   Labor Code Private Attorneys General Act, (Settlement Agreement ¶

26   5.6); (5) $7,971 will be paid to Dahl Administration, (see Pl.'s

27   Proposed Order ¶ 11 (Docket No. 51-1)); and (6) the remaining

28   amount--$679,399--will be distributed to the settlement class

                                   12

1   based on number of weeks worked during the class period, (see

2   Settlement Agreement ¶ 4.2).  The entire settlement amount is

3   non-reversionary.  (Harris Decl. II ¶ 7.)

4        Each of the 291 class members who submitted claim forms

5   will receive a settlement payment based on the number of weeks he

6   or she worked for defendant during the class period.  (See id. ¶

7   6.)  The average recovery per participating class member will be

8   approximately $2,334.70.  Plaintiff notes that the settlement

9   amount represents "33% of the maximum possible recovery," (Pl.'s

10  Mot. for Final Approval of Settlement at 16), which is "well

11  within a reasonable range . . . [for] class action settlements,"

12  Rodriguez v. W. Pub. Corp., No. CV 05-3222 R (MCX), 2007 WL

13  2827379, at *9 (C.D. Cal. Sept. 10, 2007), rev'd on other grounds

14  in Rodriguez v. W. Publ'g Corp., 563 F.3d 948 (9th Cir. 2009).

15       In light of the risks and expense of further litigation

16  in this matter, the court finds the settlement amount to be fair

17  and adequate.

18            5.   Extent of Discovery and State of Proceedings

19       A settlement that occurs in an advanced stage of the

20  proceedings indicates that the parties carefully investigated the

21  claims before reaching a resolution.  Alberto v. GMRI, Inc., Civ.

22  No. 07-1895 WBS DAD, 2008 WL 4891201, at *9 (E.D. Cal. Nov. 12,

23  2008).  Here, the parties litigated this action for over a year

24  before settling it.  (Docket No. 44 at 3-4.)  They reached

25  settlement only after engaging in "voluminous" discovery,

26  "diligent[]" investigation, motion practice, assessment of the

27  "risks of further litigation," and two "lengthy" mediation

28  sessions at which "they each aggressively advocated for their

1   respective positions." (<u>Id.</u> at 2-3, 15.)  Accordingly, the

2   extent of discovery and state of proceedings in this action weigh

3   in favor of approving the parties' settlement.

4          6.   <u>Experience and Views of Counsel</u>

5          "When approving class action settlements, the court

6   must give considerable weight to class counsel's opinions due to

7   counsel's familiarity with the litigation and [their] previous

8   experience with class action lawsuits." <u>Murillo v. Pac. Gas &</u>

9   <u>Elec. Co.</u>, Civ. No. 2:08-1974 WBS GGH, 2010 WL 2889728, at *8

10  (E.D. Cal. July 21, 2010).  Here, plaintiff has provided evidence

11  that class counsel have "substantial experience in prosecuting

12  class actions, including wage-and-hour matters." (Pl.'s Mot. for

13  Final Approval of Settlement at 16; <u>see also</u> Harris Decl. I ¶¶

14  13-16.)  Class counsel is "of the opinion that the Settlement

15  Agreement [in this action] represents a good compromise for the

16  Class, given the inherent risks, hazards, and expenses of

17  carrying the Action through trial." (Pl.'s Mot. for Final

18  Approval of Settlement at 16-17.)  The court gives "considerable

19  weight to class counsel's opinions due to counsel's familiarity

20  with the litigation and [their] previous experience with class

21  action lawsuits." <u>Alberto</u>, 2008 WL 4891201, at *10.

22  Accordingly, this factor weighs in favor of approving the

23  settlement.

24         7.   <u>Presence of Government Participant</u>

25         No government entity participated in this matter.  This

26  factor, therefore, is irrelevant to the court's analysis.

27         8.   <u>Reaction of Class Members to the Proposed</u>

28              <u>Settlement</u>

14

1     "[T]he absence of a large number of objections to a

2  proposed class action settlement raises a strong presumption that

3  the terms of a proposed class settlement action are favorable to

4  the class members."  DIRECTV, 221 F.R.D. at 529.  Here, notice of

5  settlement was sent to 427 class members and no class member

6  objected.  (Harris Decl. II ¶ 5.)  Only seven members[4] opted out.

7  (Id.)  This factor weighs in favor of approving the settlement.

8              9.   Conclusion

9         Having considered the foregoing factors, the court

10  finds the parties' settlement to be fair, adequate, and

11  reasonable under Rule 23(e).

12       C.   Attorney's Fees

13         Federal Rule of Civil Procedure 23(h) provides that

14  "[i]n a certified class action, the court may award reasonable

15  attorney's fees and nontaxable costs that are authorized by law

16  or by the parties' agreement."  If a class action settlement

17  includes an award of attorney's fees, that award must be

18  evaluated in the overall context of the settlement.  Knisley v.

19  Network Assocs., 312 F.3d 1123, 1126 (9th Cir. 2002); Monterrubio

20  v. Best Buy Stores, L.P., 291 F.R.D. 443, 455 (E.D. Cal. 2013)

21  (England, J.).  The court "ha[s] an independent obligation to

22  ensure that the award, like the settlement itself, is reasonable,

23  even if the parties have already agreed to an amount."  Bluetooth

24  Headset, 654 F.3d at 941.

25         The Ninth Circuit has approved two methods of assigning

26  attorneys' fees in class settlements: percentage-of-recovery and

27

28       [4]    See supra note 2.

1  lodestar.  Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1047 (9th

2  Cir. 2002).  The court has discretion in common fund cases, such

3  as here, to choose either method.  Id.  It may also use one as a

4  "cross-check[]" upon the other.  See Bluetooth Headset, 654 F.3d

5  at 944.

6       Class counsel in this case request $349,000 in

7  attorneys' fees, and $14,080 in litigation costs.  (Pl.'s Mot.

8  for Attorneys' Fees at 1; Harris Decl. III at 2-3.)  Defendant

9  has agreed not to oppose either request.  (Settlement Agreement

10 ¶¶ 5.1-5.2.)  The attorneys' fees requested by counsel constitute

11 33% of the gross settlement amount, and is slightly below the

12 lodestar figure of $370,245, which counsel calculated based on

13 706 hours expended in this case times rates of $650 for partners,

14 $350 for associates, and $150 for paralegals.[5]  (Pl.'s Mot. for

15 Attorneys' Fees at 11, 20.)  Counsel submitted detailed invoices

16 justifying the number of hours worked and litigation costs

17 incurred.  (See Docket No. 50-1 Exs. 1-3, Invoices; Harris Decl.

18 I Ex. 2, Invoices (Docket No. 53-2); Harris Decl. III.)

19      While the attorneys' fees requested is above the 25%

20 "benchmark" set by the Ninth Circuit for "common fund"

21 settlements, see Six Mexican Workers v. Arizona Citrus Growers,

22 904 F.2d 1301, 1311 (9th Cir. 1990), courts in this circuit have

23 approved fees that exceeded that "benchmark" in many cases, see

24 Bond v. Ferguson Enterprises, Inc., No. 1:09-CV-1662 OWW MJS,

25 2011 WL 2648879, at *9 (E.D. Cal. June 30, 2011) ("[T]he exact

26 _____

27      [5]     The rates are the same as those the court approved in
   Garnett v. ADT, LLC, No. CV 2:14-02851 WBS AC, 2016 WL 3538354,
   at *4 (E.D. Cal. June 28, 2016), which involved the same

28 defendant and similar claims.

1   percentage [of attorneys' fees] varies depending on the facts of
2   the case, and in most common fund cases, the award exceeds [the
3   25%] benchmark."). A fees award amounting to "33 1/3% of the
4   total settlement value" is considered "acceptable." Id. The
5   fact that the requested fees in this case are below the lodestar
6   figure further supports granting approval. See Vizcaino, 290
7   F.3d at 1050 ("[T]he lode star . . . provides a check on the
8   reasonableness of the percentage award.").

9        In light of the risks counsel incurred by taking this
10  case on a contingency basis, the nearly two years they spent
11  litigating this case, and the reasonable result they obtained for
12  class members, the court finds the requested fees to be
13  reasonable. The court also finds the requested litigation costs
14  to be reasonable in light of the invoices counsel have submitted
15  with their Motion. Accordingly, the court will approve counsel's
16  requested fees and costs.

17        D.   Incentive Payment to Plaintiff

18        "Incentive awards are fairly typical in class action
19  cases." Rodriguez, 563 F.3d at 958. "[They] are intended to
20  compensated class representatives for work done on behalf of the
21  class, to make up for financial or reputational risk undertaken
22  in bringing the action, and, sometimes, to recognize their
23  willingness to act as a private attorney general." Id. at 958-
24  59. Courts in this circuit have found awards of $5,000 to be
25  reasonable. Hopson v. Hanesbrands Inc., Civ. No. 08-0844 EDL,
26  2009 WL 928133, at *10 (N.D. Cal. Apr. 3, 2009) (citing In re
27  Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 463 (9th Cir. 2000)).
28        Here, plaintiff requests an incentive award of $5,000.

1  (Pl.'s Mot. for Attorneys' Fees at 21.)   In justifying the award,

2  plaintiff represents that he "expended considerable time

3  conferring with Class Counsel and their investigators" regarding

4  this case, "provid[ed] factual background and support" to

5  counsel, and "analyz[ed] ADT provided data" to assist counsel.

6  (Id. at 21-22.)   Plaintiff also notes that he "travelled to San

7  Francisco to participate in the [parties'] two mediation

8  sessions."   (Id.)   Finally, plaintiff states that he "undertook

9  the financial risk that, in the event of a judgment in favor of

10  ADT in this action, he could have been personally responsible for

11  any costs awarded in favor of ADT."   (Id.)   In light of the

12  efforts plaintiff put in to and the risks he incurred in bringing

13  this action, the court finds his requested incentive award to be

14  reasonable, and will approve the award.

15  III. Conclusion

16       Based on the above, the court grants final class

17  certification in this action and finds the parties' settlement to

18  be fair, reasonable, and adequate.   Consummation of the

19  settlement in accordance with the terms and provisions of the

20  parties' settlement agreement is approved.   The settlement

21  agreement shall be binding upon all class members who did not

22  timely opt out of this action.

23       The court also finds plaintiff's request of $349,800

24  in attorneys' fees, $14,080 in litigation costs, and $5,000 in

25  incentive award to be reasonable, and grants final approval with

26  respect to those payments.

27       IT IS THEREFORE ORDERED that plaintiff's Motions for

28  class certification, final approval of class settlement, and

18

1  attorneys' fees, costs, and incentive award be, and the same

2  hereby are, GRANTED.

3         IT IS FURTHER ORDERED THAT:

4  (1)   Solely for the purpose of this settlement, and pursuant

5        to Federal Rule of Civil Procedure 23, the court hereby

6        certifies the following class: All non-exempt

7        individuals employed by ADT in California as high

8        volume installers who were paid for services performed

9        at any time from April 18, 2013 to November 1, 2016.

10  (2)   The court appoints plaintiff Ricardo Castillo as class

11        representative and finds that he meets the requirements

12        of Rule 23.

13  (3)   The court appoints Alan Harris and Priya Mohan of the

14        firm of Harris & Ruble and David Harris of North Bay

15        Law Group as class counsel and finds that they meet the

16        requirements of Rule 23.

17  (4)   The court finds that the notice plan described in the

18        parties' settlement agreement (Docket No. 53-1) was the

19        best notice practicable under the circumstances and

20        satisfies the requirements of due process and Rule 23.

21        That plan is approved and adopted.  The notice of

22        settlement sent to the class (Docket No. 52 Ex. A)

23        complies with Rule 23(c)(2) and 23(e), and is approved

24        and adopted.

25  (5)   The court finds that the parties and their counsel took

26        appropriate efforts to locate and inform all class

27        members of the settlement.  Given that no class member

28        filed an objection to the settlement, the court finds

1        that no additional notice to the class is necessary.

2   (6)  As of the date of the entry of this Order, plaintiff

3        and all class members who have not timely opted out of

4        this settlement hereby do and shall be deemed to have

5        fully, finally, and forever released, settled,

6        compromised, relinquished, and discharged defendant of

7        and from any and all settled claims, pursuant to the

8        release provisions stated in the parties' settlement

9        agreement.

10  (7)  Plaintiff's counsel are entitled to attorneys' fees in

11       the amount of $349,800, and litigation costs in the

12       amount of $14,080.

13  (8)  Plaintiff Castillo is entitled to receive an incentive

14       award in the amount of $5,000.

15  (9)  Dahl Administration is entitled to administration costs

16       in the amount of $7,971.

17  (10) $3,750 from the gross settlement amount shall be paid

18       to the California Labor & Workforce Development Agency

19       in satisfaction of defendant's alleged penalties under

20       the Labor Code Private Attorneys General Act.

21  (11) The remaining settlement funds shall be paid to

22       participating class members in accordance with the

23       terms of the parties' settlement agreement.

24  (12) This action is dismissed with prejudice.  However,

25       without affecting the finality of this Order, the court

26       shall retain continuing jurisdiction over the

27       interpretation, implementation, and enforcement of the

28       settlement agreement with respect to all parties in

20

1          this action and their counsel of record.

2

3          The clerk is instructed to enter judgment accordingly.

4    Dated:   January 24, 2017

5                                          _____
                                          WILLIAM B. SHUBB
6                                          UNITED STATES DISTRICT JUDGE

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28